IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

JOHN W. JAMISON, III                                                                APPELLANT

V.                                                                    CAUSE NO.: 1:12CV152-SA
                                                                 consolidated with 1:12CV153-SA

TRINITY THERAPY SERVICES, INC.                                                       APPELLEE

MEMORANDUM OPINION

Appellant seeks review of the Bankruptcy Court's denial in part of an administrative expense claim filed by John Jamison. Appellant assigns three points of error made by the Bankruptcy Court in substantially lowering the administrative expenses allowed under the settlement. Because the Court finds that Bankruptcy Court's decision was not erroneous, that decision is AFFIRMED, and this case is REMANDED to the Bankruptcy Court.

*Factual and Procedural Background*

John Jamison owned real property in Clinton, Mississippi, which he leased to Clinton Care Center, LLC, a division of CareCorps Management, to operate a nursing home facility. The Lease Agreement entered into between Clinton Care Center, LLC, and John Jamison was initially for a five year term, from July 1, 1999 until June 30, 2004. Pertinent to this appeal is the provision in the lease entitled "Maintenance" found in Section 5.01 which states:

(a) Lessee accepts the Leased Property in the physical condition or state in which the Leased Property now is held without any representation or warranty, express or implied in fact or by law, by Lessor and without recourse to Lessor as to the physical nature, condition or usability thereof.

(b) Except for Lessor's obligation as herein set out, the Lessor shall not be required to furnish any services or facilities of whatsoever nature or to make any repairs or alterations or whatever nature in or to the Leased Property. Lessee hereby assumes the full and sole responsibility for the condition of the Leased Property.

(c) Lessee, at its sole cost and expense, shall maintain in good condition and order and take good care of the Leased Property, shall make all repairs thereto, interior and exterior, structural and non-structural, ordinary and extraordinary, foreseen and unforeseen, and shall maintain and keep the Leased Property and the sidewalks, paved area, roof and curbs in good order.

Once the lease term expired, the parties continued the tenancy on a month-to-month basis.

On May 1, 2008, CareCorps Management Co., LLC, and twelve of its affiliates, including Clinton Care Center, LLC, filed voluntary petitions for relief pursuant to Chapter 11 of the Bankruptcy Code. A consolidated plan of reorganization for the parent and the affiliated entities was confirmed by a Bankruptcy Court order entered December 17, 2009, wherein Jamison, who is the sole owner of Clinton Care Center, was appointed as Clinton Care Center's Liquidation Agent.

Clinton Care Center continued its occupancy of Jamison's property subsequent to the filing of Clinton Care Center's Chapter 11 bankruptcy petition even though the lease agreement was never officially assumed by the Debtor. Jamison attempted to terminate the lease effective February 28, 2009, but as he had not obtained relief from the automatic stay, his notice of termination was not initially allowed. Following the filing of an appropriate motion seeking relief, the Bankruptcy Court lifted the automatic stay, and the tenancy was terminated effective March 31, 2009. Clinton Care Center paid Jamison all rent that was due through the date of termination.

On April 26, 2010, the Liquidation Agents of CareCorps Management and its entities, filed a motion to approve a compromise which allowed Jamison to file in the Clinton Care Center case an administrative expense claim in an amount not to exceed $250,000. Jamison filed his administrative expense claim seeking $250,000 for certain repair obligations that he

contended were incumbent upon Clinton Care Center as lessee under the lease agreement,[1] as well as based on certain Mississippi Division of Medicaid bed tax obligations that might be owed by Clinton Care Center.[2]

Trinity Therapy Services, a party not precluded from filing an objection pursuant to the settlement agreement, filed an objection to Jamison's administrative expense claim. Part of the expenses claimed by Jamison involved replacing the windows at the Clinton Care Center facility, repainting interior walls, replacing doors, replacing washers and dryers, foundation repairs, replacing the flooring, and landscaping. Jamison claimed that the administrative expense claim included "necessary repairs and replacement of things that needed to be done at Clinton Care Center," pursuant to the lease agreement. In resolving the objection, the Bankruptcy Court held a hearing, heard testimony, and accepted exhibits to clarify the administrative expense claim by Jamison.

The Bankruptcy Court held the month-to-month tenancy was a "continuous contract" with the "obligations" under the Lease Agreement accruing over the entire time the premises were occupied by Clinton Care Center. Moreover, the Bankruptcy Court noted that Jamison, as the sole owner of Clinton Care Center, as well as the owner of the leased premises "obviously controlled the timing and extent of any repair or maintenance undertakings." Accordingly, the Court divided Clinton Care Center's occupancy of the leased premises into two distinct periods: pre-petition and post-petition. The Court determined that as only eleven months out of the 117 months of occupancy were spent post-petition, 9.4% of the repairs deemed to fall under the

---

[1] Jamison's original claim for the repair obligations totaled $1,061,957.67.
[2] The Bankruptcy Court required some clarification regarding the alleged bed taxes owed to the Mississippi Division of Medicaid, including the amount and priority. The Court concluded, "Before this court will permit any distribution of the debtor's funds, this matter will have to be clarified." The parties have not briefed the Medicaid bed tax issue, nor is there any indication in the record that it was ever clarified for the Bankruptcy Court. Therefore, the Court remands this cause back to the Bankruptcy Court for further action on that basis.

3

Lease Agreement would be allowed as administrative expenses. The Court expressly looked to see whether the expense claims related to Clinton Care Center's use of the premises post-petition. Using the 9.4% formulation, as well as reviewing the "Maintenance" provision of the Lease Agreement, the Court approved $22,579.59 as administrative expense, $217,628.84 as an unsecured claim, and denied Jamison's attempt to classify some actions as necessary repairs under the lease.

Jamison appealed the Bankruptcy Court's Order dated July 20, 2010, and has reduced those arguments to the following three points:

1. The Court erred in not finding or concluding that the lease agreement at issue was renewed, on a month-to-month basis, post-petition, and therefore, constituted a "new" 30-day lease for each month the lease was renewed.

2. The Court erred in declining to find that the costs of expenses, repairs and maintenance were administrative expenses pursuant to 11 U.S.C. § 365(d)(3).

3. The Court erred in declining to rule that the Debtor was responsible for all costs, expenses, maintenance and repairs under the lease agreement of the parties. As a result, the Court further erred in failing to find the costs, expenses, repairs and items of maintenance, requested by the Debtor were not administrative expenses and/or unsecured claims.

The record in this case was designated on July 2, 2012. A remark was made on the district court docket that the designated transcript from the hearing on June 15, 2010, had not been filed with the Bankruptcy Court. The parties and the Court made inquiries regarding the transcript for several months. The court reporter present at the bankruptcy hearing was unable to transcribe the substance of the hearing. Thus, there is no transcript of the bankruptcy hearing for the Court to review. The Court had the parties indicate on the record what factual disputes were on appeal and whether Jamison's deposition could be taken in lieu of the bankruptcy transcript in

order to move this case along. The parties took the deposition of John Jamison and have filed briefs in support of their positions.³

*Standard of Review*

This Court has jurisdiction to hear bankruptcy appeals as provided by 28 U.S.C. § 158. "When reviewing a bankruptcy court's decision in a 'core proceeding,' a district court functions as an appellate court and applies the standard of review generally applied in federal court appeals." Webb v. Reserve Life Ins. Co., 954 F.2d 1102, 1103-04 (5th Cir. 1992). A "core proceeding is one that 'invokes a substantive right provided by Title 11 [the Bankruptcy Code] or [ ] is a proceeding that by its nature could arise only in the context of a bankruptcy case.'" Id. at n.1 (quoting In the Matter of Wood, 825 F.2d 90, 97 (5th Cir. 1987)). The Court concludes, and the parties do not dispute, that this appeal implicates matters which constitute core proceedings pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B) and (O). The Court must therefore review the Bankruptcy Court's findings of fact for clear error, and its conclusions of law de novo. In re Nat'l Gypsum Co., 208 F.3d 498, 504 (5th Cir. 2000). Mixed questions of fact and law are reviewed de novo. Id.

*Discussion and Analysis*

Section 503 of the Bankruptcy Code entitles expenses necessary for "the actual, necessary costs and expenses of preserving the estate" to priority in the bankruptcy proceedings. That section generally only accords an "administrative expense" priority status to claims for post-petition services. See In re Bodenheimer, Jones, Szwak, & Winchell, LLP, 592 F.3d 664, 672 n.29 (5th Cir. 2009).

---

³ In light of the unorthodox procedures on this appeal, the Court notes at the outset that novel arguments and factual development not heard by the bankruptcy court will not be reviewed on appeal and were not considered in making this determination. See In re Asarco, LLC, 702 F.3d 250, 257 (5th Cir. 2012).

1. <u>Lease Agreement</u>

Appellant contests the Bankruptcy Court's finding that the month-to-month tenancy after the expiration of the initial term of the agreement constituted a "continuous contract" as opposed to a renewal each month. Jamison argues that if the contract was new or "recreated" each month, any unperformed obligations under the lease would be considered post-petition obligations, and therefore, elevated to an administrative expense priority.

In finding that Clinton Care Center's tenancy after the term of the contract was a "continuous contract," the Bankruptcy Court cited two cases, <u>Williams v. Barlow</u>, 38 So. 2d 914 (Miss. 1949), and <u>In re Miller</u>, 282 F.3d 874 (6th Cir. 2002). The Appellant contends that <u>Williams</u> does not stand for the proposition that a month to month tenancy is a "continuous contract," and that the facts contained in the Sixth Circuit case are contrary to the factual situation here.

In <u>Williams v. Barlow</u>, the Supreme Court of Mississippi determined that a month-to-month tenancy could be terminated only by at least one week's written notice. 38 So. 2d at 915. Because a month-to-month tenancy can only be terminated by one week's written notice, it stands to reason that the month-to-month tenancy is not a series of thirty day contracts, but a continuous, uninterrupted contract until the written notice of termination is given. Moreover, the Sixth Circuit specifically rejected the contention that a month-to-month tenancy created a new contract between the lessor and lessee. That court affirmed the lower court's assertion that a "month-to-month tenancy was not a series of new 30-day contracts, but, was instead one continuing tenancy." <u>In re Miller</u>, 282 F.3d at 878 (quoting <u>Chateau Comm., Inc. v. Miller</u>, 252 B.R. 121, 124 (E.D. Mich. 2000)).

Jamison contends this Court should rely on VLC One, LLC v. Davis, 2009 WL 297005 (Wash. Ct. App. Feb. 9, 2009), for the contention that a new tenancy occurs each month thereby recreating the legal relationship between the lessor and lessee. In VLC One, the Court of Appeals of Washington held that a month-to-month holdover tenancy creates a new tenancy but does not renew or extend the original lease. Indeed, that court held that the obligations in the original lease ended at the expiration of the term of the lease because a provision of the contract explicitly stated that the obligations terminated at the end of the contract term.

The Court finds that the Bankruptcy Court did not err in its interpretation of the facts of the month-to-month tenancy, nor did the court misapply the law to find that the contract was continuous. The Court reviewed the pertinent authority, some conflicting, and determined the post-termination contract was a continuation of the lease agreement, such that those obligations were not fully renewed in the post-petition period. The Court finds that interpretation reasonable. Aside from relying on legal precedence for the contention that a month-to-month tenancy is not renewed or recreated each month, such that repair obligations over the term of the lease agreement are due and owing each month, the Court also relied on practicality. The Court noted, "Common sense dictates that most of the obligations that are subject to Jamison's claim did not accrue completely in the last thirty day renewal period of the lease." Accordingly, the Court affirms the Bankruptcy Court's finding of a "continuous contract."

2. Administrative Expenses under 11 U.S.C. § 365(d)(3)

Appellant notes that regardless of whether the lease is renewed each month or is a continuous contract, all administrative expenses requested should be granted pursuant to 11 U.S.C. § 365(d)(3). Section 365(d)(3) provides that the trustee "shall timely perform all the obligations of the debtor . . . arising from and after the order for relief under any unexpired lease

7

of nonresidential real property, until such lease is assumed or rejected . . . ." Appellant contends that because the lease agreement provision required Clinton Care Center to "maintain in good condition and order and take good care of the Leased Property, [] make all repairs thereto, interior and exterior, structural and non-structural, ordinary and extraordinary, foreseen and unforeseen, and [] maintain and keep the lease property and the sidewalks, paved area, roof and curbs in good order," those were obligations due pursuant to Section 365(d)(3). Trinity argues that because the repair and maintenance expenses which Jamison claimed did not "arise" at a certain fixed date, the Bankruptcy Court did not err by following the "accrual" or "pro rata" approach of apportioning the expenses over the life of Clinton Care Center's occupancy.

Section 503 of the Bankruptcy Code describes those expenses entitled to administrative priority and allows as such "the actual, necessary costs and expenses of preserving the estate." The Bankruptcy Court determined that only those expenses related to the use of the premises post-petition were necessary to preserve the estate. The Court then assessed a pro rata percentage to determine the expenses applicable to the eleven month post-petition period. The Bankruptcy Court further held that the portion of expenses attributable to the pre-petition period is entitled to only an unsecured non-priority status. Accordingly, the Court determined the post-petition occupancy to equal 9.4% of the entire occupancy; therefore, it utilized this percentage factor in calculating the allowable administrative expenses.

The Court finds that the pro rata calculation of applicable administrative expenses relating to repair and maintenance of the facility was reasonable and correct. The Court finds that pursuant to the equitable authority of the Bankruptcy Courts, the correct result was rendered in this case. See In re Grimland, Inc., 243 F.3d 228, 234 (5th Cir. 2001) ("[T]he bankruptcy court is a court of equity and it must undertake an analysis of equitable considerations."); In re

AWECO, Inc., 725 F.2d 293, 300 (5th Cir. 1984) ("Equitable considerations should be preeminent in the exercise of bankruptcy jurisdiction.").

The Bankruptcy Court noted, and this Court acknowledges, that Jamison, as both owner of the leased premises and owner of the lessor, "obviously controlled the timing and extent of any repair or maintenance undertakings." Therefore, only 9.4% of the requested expense was attributable to the preservation and obligations of the estate post-petition. This Court affirms the Bankruptcy Court's calculation of the post-petition administrative expenses due.

3. Determinations of Repair and/or Maintenance Obligations

Appellant takes issue with the Bankruptcy Court's determination of expenses it deemed were covered under the maintenance provision of the Lease Agreement and which expenses were not. Moreover, the Appellant contends the Bankruptcy Court erred in failing to find that the remaining expenses were not administrative expenses or unsecured claims. Jamison asserts that all requested expenses not deemed administrative should be at least considered unsecured claims. The Bankruptcy Court separated the items that were legitimate repairs and maintenance within the scope of the lease agreement provision into two amounts: post-petition administrative expenses and prepetition unsecured claims. Thus, the Court denied in their entirety those expenses not required under the lease agreement, and this Court finds no error therein.[4] Further, the Bankruptcy Court capped Jamison's claim to the $250,000 amount pursuant to his agreement. The Court finds no error.

---

[4] The Bankruptcy Court held that the following items were not "repairs" or "maintenance" as provided under the lease agreement: (1) installing new windows ($67,255.00); (2) removing and replacing the washers and dryers ($65,667.05); (3) replacing the drop ceiling panels ($41,629.00); (4) installing a new roof and gutters ($114,000); (5) repairing sewer drains and plumbing ($55,192.66); (6) installing new flooring ($90,833.34); (7) replacing whirlpool tub ($10,724.62); (8) replacing the generator to accommodate auto transfer switches ($19,464.02); (9) repairing the foundation based on a default of the original construction ($74,983.05); (10) replacing furniture, fixtures, and equipment ($151,250.00); (11) removing and installing landscaping ($24,974.50); and (12) removing and replacing HVAC units ($105,776.00).

The Bankruptcy Court's factual determinations as to whether such expenses were covered by the maintenance provision Lease Agreement were not clear error or contrary to law. The findings of the Bankruptcy Court are affirmed.

4. Taxes and Insurance

The Court also notes that on appeal, Jamison contends that taxes and insurance not paid during the post-petition occupancy are administrative expenses entitled to priority. Because this argument was not put before the Bankruptcy Court, this Court will not review that contention on appeal. See In re Asarco, LLC, 702 F.3d at 257.

5. Equitable Considerations

Jamison owned in full both Lessor and Lessee. He now seeks to deprive other creditors of possible recovery by claiming an overinflated administrative expense fee. Indeed, the record reflects that Clinton Care Center had roughly $214,000 to pay its creditors, and Jamison sought $250,000 as administrative expenses. Moreover, the figures provided were estimates of work to be performed. The facts as they have developed since this litigation began indicate that the new tenants of Jamison's Clinton, Mississippi facility have already performed many of the listed tasks with no cost to Jamison. The Court finds that the timing and amount of Jamison's request for maintenance and repairs under the lease to be indicative of the intent of the Appellant. Over the almost ten year course of dealing prior to the petition for bankruptcy, Jamison never enforced the maintenance provision. Clinton Care Center only paid rent and no other requests for payment or to perform repairs was made.

In light of the Bankruptcy Court's inherent powers of equity, the Order of that court is affirmed.

*Conclusion*

The Court AFFIRMS the Bankruptcy Court order denying in part the administrative expense claim filed by John Jamison. This case is REMANDED to the Bankruptcy Court for a determination of the Medicaid bed tax issue as noted in the order. This case is CLOSED.

SO ORDERED, this the 30th day of March, 2013.

                                          **/s/ Sharion Aycock**
                                          **U.S. DISTRICT JUDGE**